IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH E. FORSYTHE, JR.          )
                                  )
     Plaintiff,                   )
                                  )
     vs.                          )    Civil Action No. 07-266
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
     Defendant.                   )

**MEMORANDUM OPINION**

## I. INTRODUCTION

On September 18, 2008, the Court entered a Memorandum Opinion remanding this matter to the Commissioner of Social Security ("Commissioner") for further consideration of the applications by Plaintiff Joseph Forsythe, Jr., for Social Security disability insurance and supplemental security income benefits. (*See* Docket No. 15, "Opinion.") Plaintiff filed a petition for attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(a), seeking payment by the Commissioner of $6,682.50 for 40.5 hours expended in pursuing Mr. Forsythe's case after the Social Security Appeals Council affirmed the decision of the Administrative Law Judge ("ALJ") denying benefits. (Docket No. 18, "Petition.")

On October 8, 2008, the Commissioner filed a brief in opposition to Plaintiff's Petition, arguing first that his position in this matter was substantially justified and thus Plaintiff's

counsel is not entitled to attorney fees under EAJA or, alternatively, that the requested fees should be reduced to $4,867.50, more properly reflecting the time an attorney as experienced in Social Security matters as Plaintiff's counsel reasonably would have spent on this matter. (See Docket No. 20, Defendant's Opposition to Plaintiff's Petition for Attorney Fees under the Equal Access to Justice Act, "Def.'s Opp.") Plaintiff's counsel then filed a reply to Defendant's Opposition. (Docket No. 21, "Plf.'s Reply.")

Having considered the arguments raised by both parties, the Court concludes that Plaintiff's counsel is entitled to attorney fees pursuant to EAJA but will reduce the award to $6,435.00.

## II. STANDARD OF REVIEW

"[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." Comm'r, INS v. Jean, 496 U.S. 154, 163 (1990). To facilitate Social Security suits, as well as certain other civil actions brought against the federal government, a district court "shall award to a prevailing party other than the United States fees and other expenses. . .unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The use of the word "shall" establishes that unless the court finds that one of the two exceptions applies, the

2

EAJA statute makes payment of attorney fees mandatory to a qualified prevailing party.[1] Corona v. Barnhart, 431 F. Supp.2d 506, 511 (E.D. Pa. 2006), *citing* Allen v. Bowen, 821 F.2d 963, 964 (3d Cir. 1987). Because Defendant does not argue that any "special circumstances" exist which would make the award of fees unjust, we consider only the question of whether the Commissioner's position was "substantially justified." (*See* Def.'s Opp. at 1.)

The question of whether the Commissioner's position before this Court was substantially justified does not correspond simply to the fact that Commissioner "lost" on the merits when the matter was remanded for further consideration. *See* Kiareldeen v. Ashcroft, 273 F.3d 542, 554 (3d Cir. 2001) (in the context of deportation hearings before the Immigration and Naturalization Service, also subject to EAJA.) There, the United States Court of Appeals for the Third Circuit defined the phrase "substantially justified" as follows:

> Substantial justification is measured on the basis of whether the government was justified in initiating the proceeding and going forward with the hearing before the . . . judge. To be substantially justified, the government's position need not be "correct," or even "justified to a high degree.". . .Rather, the government

---

[1] Defendant does not dispute the assumption that Plaintiff was the prevailing party. The remand herein was pursuant to "sentence four" of 42 U.S.C. § 405(g), which states: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In Shalala v. Schaefer, the Supreme Court held that "a party who wins a sentence-four remand order is a prevailing party." 509 U.S. 292, 302 (1993).

3

> must simply have a "reasonable basis in both law and fact" or be "justified in substance or in the main -- that is, justified to a degree that could satisfy a reasonable person.". . .Whether the government was substantially justified, therefore, does not present the same question as that presented by the underlying merits of the case. The relevant legal question is "not what the law now is, but what the Government was substantially justified in believing it to have been."

Kiareldeen, 273 F.3d at 554, *quoting* Pierce v. Underwood, 487 U.S. 552, 565, 566 n.2 and 561 (1988).

In short, the question is "whether the Commissioner's defense of the ALJ's decision had: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." Corona, 431 F. Supp.2d at 512, *citing* Morgan v. Perry, 142 F.3d 670, 684 (3d Cir. 1998); *see also* Kiareldeen, 273 F.3d at 544, n.5 (same), and Edge v. Schweiker, 814 F.2d 125, 128 (3d Cir. 1987) ("Substantial justification constitutes a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position is considered frivolous.")

The government bears the burden of establishing that there was substantial justification for its position. Morgan, id. When the Commissioner's argument relies on a question of law, the government can generally show its position was reasonable if the question of law is close or unsettled. Grossberg v. Barnhart, No. 04-2397, 2005 U.S. App. LEXIS 4950, *6 (3d Cir. Mar. 29, 2005), *citing* Washington v. Heckler, 756 F.2d 959, 961-962 (3d Cir. 1985).

4

Conversely, "when the government's legal position clearly offends established precedent, its position cannot be said to be substantially justified." Grossberg, id., *quoting* Washington, id.

## III. **ANALYSIS**

The Court assumes familiarity with the facts, procedural history, and analysis of this case set out in detail in its Opinion. There, the Court concluded Mr. Forsythe's applications for benefits should be reconsidered by the Social Security Administration for two primary reasons. First, the Court concluded ALJ had failed to explain his analysis of, or addressed only in a cursory manner, much of the medical evidence compiled during the three years preceding Plaintiff's hearing before the ALJ; thus we were unable to give much of his decision the "meaningful review" required of this Court. Second, in light of substantial medical evidence regarding certain conditions the ALJ did not address, e.g., Plaintiff's headaches, chronic pain in his legs and arms, ataxia, tremor, and side effects from medication, the ALJ had erred by applying the Medical-Vocational guidelines ("the grids") at step four of his analysis, or at a minimum, had failed to explain why he did not believe those limitations affected Plaintiff's ability to perform the full range of light work. The Commissioner argues that the positions taken in his own motion for summary judgment and in

opposition to the four arguments raised by Mr. Forsythe[2] were supported by substantial evidence. In support of this argument, he (1) reiterates in detail the evidence on which the ALJ relied in concluding Plaintiff's headaches had no more than a *de minimus* effect on his ability to work; (2) concludes that the ALJ did not err in applying the Medical-Vocational guidelines, based on medical evidence which undermined Plaintiff's claims of significant non-exertional impairments; (3) contends that recent Third Circuit precedent supports his position before this Court that the ALJ's failure to specifically reference Listing 11.17 was not fatal; and (4) points out that, contrary to Plaintiff's argument, the ALJ did in fact address his fibromyalgia. (Def.'s Opp. at 3-10.)

We need not discuss each of Defendant's arguments in detail because we conclude the ALJ and the Commissioner disregarded well-established law in at least two regards.

First, as we clearly explained in the Opinion, the Third Circuit Court of Appeals reaffirmed more than eight years ago (and on many occasions since) that an ALJ must set forth the reasons for his findings at each step of the analysis and that where the opinion consists only of summary conclusions, does not identify the

---

[2] As Plaintiff points out, he actually raised five arguments in his brief, but Defendant's Opposition fails to mention the argument that the ALJ erred at step two of his analysis by concluding Plaintiff's occipital neuralgia, myofascial pain syndrome, tremors, and fibromyalgia were not severe impairments. (Plf.'s Reply at 5.) This argument was discussed in detail in the Opinion at 14-18 and again at 20-23.

relevant impairments, or discuss the evidence, the decision is "beyond meaningful judicial review" by the district court on appeal. (*See* Opinion at 11-13, *citing, inter alia*, Burnett v. Commissioner of SSA, 220 F.3d 112 (3d Cir. 2000).) While we did not explicitly refer to the ALJ's analysis herein as "hopelessly inadequate,"[3] our first reason for remanding this case paralleled two of the three reasons identified by the Burnett court, that is, the need for discussion of significant medical evidence from three of Plaintiff's long-term treating physicians which did not appear at any point in the ALJ's analysis and for an explanation of his

---

[3] We did, however, find some portions of the ALJ's decision incomplete, inaccurate and decidedly biased. For instance, he noted that Dr. Kassay Nassr's notes included objective medical evidence, e.g., MRIs, x-rays and physical examinations, which supported his conclusion that Plaintiff suffered from mild degenerative disk disease; he also noted that "despite initial tremors, this condition improved with Atenolol." (Tr. 19, *citing* Exhibits 23F through 26F.) Exhibit 23F contains notes by Dr. Hong, not Dr. Nassr. Exhibits 24F and 26F are reports from Family Medical Center where Plaintiff was treated by Dr. Murphy for fibromyalgia and chronic pain. Exhibit 25F consists of three pages of notes for two appointments with Dr. Nassr. In the first report from December 8, 2004, Dr. Nassr noted Plaintiff had received "no significant relief from right occipital cryoablation" and "trigger point injections provided relief for only one week." He further recommended repeating the trigger point injections, increased his dosage of zanaflex, and gave Mr. Forsythe a botox injection. (Tr. 461-462.) On September 29, 2005, in addition to the objective evidence cited by the ALJ, Dr. Nassr noted Plaintiff's difficulty walking, lower back pain, a "very limited" functional level, e.g., walking with two crutches and taking slow steps, decreased coordination in his lower and upper extremities with tremor and shaking, a positive Romberg sign, and a diagnosis of "moderate ataxia in additional to mild proximal weakness." (Tr. 459-460.)
   In short, in one paragraph, the ALJ incorrectly cited the record, did not find anything worth noting in 63 pages of medical records except those items which supported his finding of mild degenerative disk disease, and ignored medical evidence of chronic occipital headaches, tremor, lack of coordination, and difficulty walking.

7

reasoning, particularly with regard to his "severity" determination at Step Two. (*See* Opinion at 18.)

As we further noted, the requirement for clarity, completeness, and a sufficiently thorough review of the evidence did not begin with the Court of Appeals' decision in Burnett, but can be found in binding Third Circuit precedent at least as early as Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981). In that case, the Court required the ALJ's opinion to include "not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected," so that the reviewing court can determine "if significant probative evidence was not credited or simply ignored." Id. at 705. Although in his Opposition to the Petition, the Commissioner reiterates the evidence which the ALJ cited in his decision, he offers no legal defense for the ALJ's failure to explain why he apparently rejected significant probative evidence, e.g., the medical records of Drs. Hong, Ernstoff and Murphy, nor does he cite to other precedential Third Circuit law which would make the holdings of Cotter and Burnett questionable or unsettled.

Based on these precedents, the ALJ's failure to discuss all the probative evidence should have been evident to the Appeals Council and to the Commissioner. In short, this is not one of those instances in which "the Commissioner's position, though incorrect, involved a close or unsettled question of law." Corona,

431 F. Supp.2d at 517. Thus, we conclude the Commissioner's legal position clearly offends established precedent and was not substantially justified.

The second major reason for remand was for clarification of how the ALJ arrived at the conclusion that Mr. Forsythe had the residual functional capacity to perform the full range of light work despite his numerous subjective complaints, side effects of medication, chronic pain and impairments which the ALJ did not recognize or discuss. (*See* Opinion at 18-24.) As we stated, the ALJ's citation to the relevant law and his conclusory statement that according to Rule 202.21 jobs exist in the national economy which Mr. Forsythe could perform were insufficient to allow the Court to determine the ALJ's reasoning. (Id. at 27.)

Defendant argues that "the evidence of record undermined Plaintiff's claim of significant nonexertional impairments," specifically his use of crutches bilaterally, his right-hand familial tremor, and headaches. (Def.'s Opp. at 4-6.) He contends, therefore, that he was justified in arguing before this Court that the ALJ permissibly relied on the grids to determine Plaintiff could perform light work existing in the national economy. (Id. at 6.)

The problem with the Commissioner's argument is that it was never made by the ALJ. As Plaintiff pointed out in his reply to Defendant's motion for summary judgment, the ALJ never mentioned

9

the use of crutches or his bilateral lower extremity weakness, dismissed Plaintiff's headaches as *de minimus* without adequate explanation, and failed to discuss much of the medical evidence, including his ataxia, fibromyalgia, myofascial pain syndrome, and occipital neuralgia. Defendant's detailed arguments and citations to the record in his Opposition to the Petition notably omit any reference to the points in the ALJ's opinion where he presented the evidence and analysis the Commissioner offered in his opposition to Plaintiff's motion for summary judgment and now reiterates. Such post-hoc justifications clearly contradict established precedent which hold that a reviewing court may only consider what is plain on the face of the ALJ's decision and may not "read into" it reasoning or conclusions which are not clearly stated. *See* SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) and numerous Social Security cases citing Chenery, e.g., Fargnoli v. Halter, 247 F.3d at 43-44 and n.7 (3d Cir. 2001), concluding that the district court had erred when it recognized the ALJ's failure to consider all relevant and probative evidence and attempted to rectify this error through its own analysis, thereby violating the Chenery requirement that "the grounds upon which an administrative order must be judged are those upon which the record disclosed that its action was based;" Cefalu v. Barnhart, 387 F. Supp.2d 486, 491 (W.D. Pa. 2005) (Hardiman, J.) ("the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot

rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ"); and Telesha v. Barnhart, CA No. 01-2371, 2003 U.S. Dist. LEXIS 16359, *10 (M.D. Pa. Mar. 31, 2003) ("the obligation to consider all probative evidence cannot be met either by a defendant's responsive filing or a reviewing court.")

In short, under long-standing precedent, the Commissioner cannot rectify by his own after-the-fact analysis the ALJ's failure to consider all the medical evidence of record and to explain why certain evidence was rejected or given little weight. Thus, we are compelled to conclude that the Commissioner's position on appeal was not substantially justified.

Consequently, we find there is no basis on which to deny Plaintiff's Petition for attorney fees and turn to that issue.

## IV. **ATTORNEY FEES**

As Defendant points out, attorney fees and expenses under EAJA must be reasonable. (Def.'s Opp. at 12, *citing* 28 U.S.C. §§ 2412(b) and (d)(2)(A); *see also* Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990), placing the burden of proving reasonableness on the party seeking the fees.) "Reasonable" fees are those which are not "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). 1990). If there are objections to the amount sought by the

prevailing party, this Court has discretion to modify the Petition. *See* Jean, 496 U.S. at 161 (the court's discretion arises from its "superior understanding of the litigation.") The Court has a duty to provide "a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437.

Plaintiff's counsel seeks a total award of $6,683.50 for 40.5 hours expended on this matter during the period September 25, 2007, through September 18, 2008; there is no request for costs or expenses. (*See* Docket No. 18.) The activities include an initial conference with Mr. Forsythe; file review; preparation of the complaint; review of Defendant's answer to the Complaint and the administrative transcript; further review of the file in connection with preparing the brief in support of the motion for summary judgment; review of Defendant's comparable motion; preparation of the reply brief; review of the Court's opinion and order of remand; and correspondence to Mr. Forsythe at various points.

Defendant first takes issue with 25.5 hours spent preparing the brief in support of the motion for summary judgment, arguing that none of the issues raised therein was novel or unique. He also argues that in the case of an attorney such as Plaintiff's, who has 19 years of disability law experience representing more than 18,000 clients, "the government is entitled to expect some additional efficiency." (Def.'s Opp. at 13.) He suggests brief writing hours be reduced from 25.5 to 20 hours. (Id. at 14.)

12

We note that the 25.5 hours does not relate only to preparation of the brief in support of the motion for summary judgment, but also to review of the file and correspondence with Mr. Forsythe about the motion. Plaintiff's current counsel did not represent him at the hearing or before the Appeals Council (*see* Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 7, "Tr.," at 15 and 524-526.) Therefore, a reasonable amount of time devoted to becoming familiar with the administrative record was necessary. Moreover, it is evident from the numerous citations to the record (some 110 footnotes in his brief) that counsel performed a thorough review. Nor did Plaintiff's new counsel simply adopt the argument made by his former attorney to the Appeals Council (i.e., that Plaintiff's degenerative disk disease satisfied Listing 1.04), but developed five new arguments. We therefore will not reduce these hours.

The Commissioner next objects to the time allocated for counsel's review of Defendant's brief in support of his motion for summary judgment, arguing that an attorney well-versed in disability law should not take 2.5 hours to review a 26-page brief. We agree, particularly in light of the fact that counsel also would, logically, have also reconsidered the arguments in Defendant's brief in preparing his own reply brief. We believe one hour is more in keeping with reasonable time on this task.

The Commissioner objects to counsel's allocation of 6.5 hours

13

for reviewing the file and preparing a reply brief. The basis of this objection is that the reply brief did little more than reiterate two arguments previously made in Plaintiff's initial brief regarding the question of whether his use of crutches was "medically necessary" and whether his headaches should have been deemed a "severe" impairment. (Def.'s Opp. at 14-15.) We disagree. In the 8-page reply brief, counsel directly attacked the Commissioner's argument that the crutches were not medically necessary and pointed out that this must be considered an improper post-hoc justification because the ALJ had never mentioned Plaintiff's use of crutches anywhere in his opinion. (*See* Docket No. 13 at 3-6.) We also find that counsel's reply regarding the question of whether Plaintiff's headaches were a "severe impairment" raises new arguments, i.e., that the Commissioner in his brief had stated an incorrect legal standard and that the reasoning in his brief was again post-hoc justification. (Id. at 7-9.) While an accomplished attorney might have devoted less time to the reply brief, we do not find 6.5 hours excessive or redundant. *Compare* Bohovich v. Astrue, CA No. 06-1710, 2008 U.S. Dist. LEXIS 56798, *13-*14 (M.D. Pa. July 24, 2008), where the court concluded that six hours spent researching and writing a 3-page, somewhat redundant, reply brief was reasonable.

Finally, the Commissioner objects to 1.5 hours spent reviewing the Court's Opinion and preparing correspondence to Mr. Forsythe

regarding the decision. The Opinion was just over 27 pages long, of which three and one half pages contained statements of the standard of review and the outline of the analysis to be applied by the ALJ, matters which would not require lengthy consideration by Plaintiff's counsel. (*See* Opinion at 4-7.) According to the Commissioner's own calculation, an experienced attorney should be able to review 23.5 pages in slightly less than one hour. (Def.'s Opp. at 14.) Since we do not know how detailed the letter to Mr. Forsythe might have been, we are reluctant to reduce that time to less than one-half hour and will therefore approve this entry.

In sum, we agree with Defendant that Plaintiff's Petition should be reduced to 39 hours and will therefore award EAJA fees in the amount of $6,435.00.[4]

An appropriate Order follows.

October 22d, 2008

William L. Standish
United States District Judge

---

[4] The Commissioner also argues that the average EAJA request for disability cases in this district in 2008 is just over $4,800.00 and that the average award is $4,323.78. No source is cited for these statistics, nor for the contention that the average EAJA case takes approximately 25.65 hours of attorney time. (Def.'s Opp. at 15, n.3.) The Court is unsure how the "average EAJA case" is defined, but is not persuaded by this argument.